UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAKESH DHINGRA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>United States, et al.,<br><br>　　　　Defendants. | Case No. 19-cv-00360-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 29 |

## I. INTRODUCTION

In 2002, Plaintiff Rakesh Dhingra was convicted of using the internet to solicit sexual activity from a minor and was sentenced to twenty-four months custody and three years of probation. *United States v. Dhingra*, 371 F.3d 557, 561 (9th Cir. 2004). Dhingra appealed in 2004, but the Ninth Circuit affirmed his conviction and sentence. *Id.* at 568.

Dhingra, pro se, now brings this action alleging that Defendant the United States of America[1] violated his rights under the First and Fifth Amendments to the United States

---

[1] Dhingra and the United States have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c). Although the caption of Dhingra's operative complaint includes only the United States as the defendant, the body of his complaint names two federal officers as defendants: an "ICE Attaché" based in Manila and a "Legal Officer" of the Department of State based in Sterling, Virginia, neither identified by name. 1st Am. Compl. (dkt. 23) ¶¶ 9–15. Those individuals do not appear to have been identified or served, and Dhingra's opposition brief does not dispute that the United States is an appropriate party to bring the present motion. While unserved defendants generally must also consent for a magistrate judge to exercise jurisdiction based on "consent of the parties" under § 636(c), *see Williams v. King*, 875 F.3d 500 (9th Cir. 2017), this Court is not aware of any decision holding that consent is necessary from defendants who are both unserved and unidentified. Courts disregard such defendants in other contexts, including contexts affecting jurisdiction. *See, e.g.*, 28 U.S.C. § 1441(b)(1) (providing that for removal based on diversity of citizenship, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Fat T, Inc. v. Aloha Tower Assocs. Piers 7, 8 & 9*, 172 F.R.D. 411, 414–15 (D. Haw. 1996) (reaching the same conclusion for diversity jurisdiction with respect to cases initially filed in federal court). The Court also notes that Zaragoza-Rios cannot proceed against the unserved defendants in this case without at some point filing an amended complaint to identify them, supporting a conclusion that they are not yet "parties" under

Constitution. The United States moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure and for failure to state a claim Under Rule 12(b)(6). The Court finds the matter suitable for resolution without oral argument and VACATES the hearing and case management conference set for August 9, 2019. For the reasons stated below, the Court GRANTS the United States' motion to dismiss.

## II. BACKGROUND

### A. Allegations of Dhingra's First Amended Complaint

Plaintiff Rakesh Dhingra's First Amended Complaint ("FAC," dkt. 23) asserts that Homeland Security Investigations ("HSI"), an agency of Immigration and Customs Enforcement within the Department of Homeland Security ("DHS"), violated his First and Fifth Amendment rights by sending a "watch list order" to the Philippine immigration authority at the Manila airport, which then denied him entry into that country. FAC ¶ 7. Dhingra also asserts that the Passport Agency of the U.S. Department of State violated his due process rights by revoking his passport and notifying him that he could obtain a new one only with an endorsement pursuant to the International Megan's Law ("IML"), 22 U.S.C. § 212b(c)(1), indicating that Dhingra is a sex offender. *Id.* ¶¶ 14, 15. Finally, Dhingra claims that application of the IML while he has a petition for writ of error coram nobis pending as to his criminal conviction is a violation of his due process rights under the Fifth Amendment. *Id.* ¶ 31. Dhingra's child lives in the Philippines and his family lives in India, and he argues that a passport with an IML endorsement is effectively a travel ban, preventing him from associating with family and practicing his religion freely with them. *Id.* ¶ 15.

Dhingra asks the Court to place a "hold on the 'IML endorsement and notification provision'" until his petition for writ of error coram nobis has been resolved. *Id.* ¶ 35. Dhingra also requests an injunction to prevent the revocation of his passport and "re-instate the same,

---

the present complaint. At least one court after *Williams* has held that consent was not required where, as here, unserved defendants were identified only by fictitious names, although in that case the time for permissive service under Rule 4(m) of the Federal Rules of Civil Procedure had expired. *Steger v. Peters*, No. 6:16-cv-02093-YY, 2018 WL 3430671, at *1 n.1 (D. Or. July 16, 2018). The Court therefore concludes that consent of the unserved and unnamed individual defendants in this case is not necessary to proceed under § 636(c).

2

allowing him to travel with the same passport" or "[a]lternatively, a provision with some other simplified procedure be made with foreign authorities in India and Philippines only, to permit plaintiff to meet with his family and 6-year-old son." *Id.* Further, Dhingra requests

> An order to prevent Homeland Security Investigation from issuing any Watch List Order of Plaintiffs' [sic] name, to the authorities of Philippines and India only, including cancellation of previous watch list order that was issued.

*Id.* Dhingra also requests an "[o]rder that Defendants' [sic] tailor the IML Law to comply with Plaintiffs' [sic] civil rights," allowing other "covered individuals . . . to travel abroad, if they have close family or loved ones living abroad and to attend religious ceremonies with the family." *Id.* Dhingra requests "declaratory judgment that Defendants' policies, practices and conduct as alleged herein violate Plaintiffs' [sic] rights under the United States Constitution." *Id.* Finally, Dhingra asks for compensatory and punitive damages. *Id.*[2]

### B. The United States' Motion

The United States asserts that Dhingra lacks standing to challenge IML's passport identification and notification provisions and has not stated a claim for relief "regarding familial association, religious exercise or due process." Mot. (dkt. 29) at 1. With respect to standing, the United States argues that Dhingra neither had nor applied for an IML passport and was not denied entry into Manila based on an IML passport endorsement. *Id.* The United States argues that Dhingra "failed to identify any 'certainly impending' future injury" because he has not requested a new passport and failed to "identify any concrete plans to visit the Philippines or India in the future." *Id.* at 8. The United States also contends that the relevant action taken was by "an independent foreign sovereign not before this Court," i.e., the Philippine immigration authority

---

[2] Dhingra's complaint erroneously asserts claims under 28 U.S.C. § 1983, which pertains to action under color of *state* law and generally does not apply to conduct of the federal government or its officers. *See* FAC ¶¶ 3, 18–33. In his case management statement, Dhingra recognizes this error and offers to file a second amended complaint asserting his claims as violations of the United States Constitution, without reference to § 1983. For the purpose of this order, the Court disregards the first amended complaint's references to that statute. *Cf. Johnson v. City of Shelby*, 574 U.S. 10 (2014) (per curiam) (summarily reversing dismissal for failure to specifically invoke § 1983 in bringing constitutional claims against state officials, and holding that "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted").

3

that refused Dhingra entry in Manila. *Id.* at 1. The United States argues that "it is the criminal history itself rather than any particular means by which foreign authorities learn the information that influences their decision." *Id.* at 8. For these reasons, the United States characterizes Dhingra's injuries as "speculative" and "insufficient to establish standing." *Id.* at 9.

The United States also asserts that Dhingra fails to state a claim upon which relief can be granted. *Id.* at 1. The United States reasons that

> covered sex offenders like [Dhingra] do not have a liberty interest in preventing the United States from transmitting accurate information about their criminal histories to parallel authorities in countries where they plan to travel—either through a notification or by placing that information in a passport book.

*Id.* at 2.

The United States contends that Dhingra fails to state a claim regarding familial association (which the Ninth Circuit has characterized as a liberty interest under the Due Process Clause), noting that the IML does not act as a complete travel ban, and citing instances where the Supreme Court has distinguished the stigma from the criminal conviction from the notification or registration itself. *Id.* at 9–10. Along these same lines, the United States argues that the injury asserted by Dhingra "derives from the criminal history itself, not the IML." *Id.* The United States also argues that even if Dhingra could assert a liberty interest, "the IML's passport identifier and notification provisions withstand any level of constitutional scrutiny." *Id.* at 11. The United States quotes a recent decision from this district for the proposition that the passport provisions of the IML are "'rationally related to government interests in preventing U.S. persons from committing acts of sexual abuse or exploitation in other countries and in facilitating cooperation with and reciprocal notifications from other countries.'" *Id.* (quoting *Doe v. Kerry*, No. 16-cv-0654-PJH, 2016 WL 5339804, at *22 (N.D. Cal. Sept. 23, 2016)).

The United States also argues that Dhingra failed to show that his right to freely practice his religion was impacted by the IML provision, which the United States characterizes as a "law[] of general application." *Id.* at 12. "Even if the provisions had an incidental burden on religion," the United States contends that "they would pass constitutional muster under any level of scrutiny." *Id.* (internal citations omitted).

4

Finally, the United States responds to Dhingra's allegations that his Fifth Amendment rights have been violated. *Id.* The United States argues that Dhingra's procedural due process rights have not been violated because he "already had a procedurally safeguarded opportunity to contest his conviction." *Id.* (internal citations omitted). The United States points to the procedural history of Dhingra's conviction—he was convicted, appealed his conviction, and the Ninth Circuit upheld his conviction. *Id.* at 13; *see also* Def.'s Request for Judicial Notice (dkt. 29-1) (requesting judicial notice of the docket of Dhingra's criminal case and Judge Armstrong's order setting a briefing schedule on his petition for writ of error coram nobis). The United States contends that *Heck* bars Dhingra's claim that the IML should not apply based on any error in his conviction, including any errors asserted in Dhingra's writ of coram nobis.[3] *Id.*

### C. Dhingra's Opposition Brief

Dhingra opposes dismissal, reasserting the First and Fifth Amendment claims of his complaint, as well as providing more detail about why he believes his conviction was unlawful. *See generally* Opp'n (dkt. 31). First, Dhingra asserts that he was falsely convicted of the underlying criminal conviction. *Id.* at 1. He states that

> [b]ecause of the serious nature of misconduct including perjury and obstruction of justice by a dirty cop-Agent, Esposito, in obtaining the underlying conviction against plaintiff, the government cannot show compelling interest against plaintiff, in this instant case to restrict him from meeting his family or assemb[ling] with his family to attend a religious function and, thereby impose a ban on 'meeting with family living abroad' with the use of IML Law notification provisions.

*Id.* at 7. Further, Dhingra argues that *Heck* does not apply to him because "the instant case is a civil rights complaint, and there is pending litigation with regard to his Petition for Writ of Error

---

[3] The Supreme Court held in *Heck v. Humphrey*, that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) (footnote omitted).

5

1  *Coram Nobis*." *Id.* By this same logic, Dhingra asserts that he has a liberty interest because he
2  was falsely convicted. *Id.* at 8.

3      Dhingra also responds to the United States' assertion that an IML endorsement does not
4  equate to a prohibition on travel. *Id.* He argues that he has shown "imminent prospect of future
5  injury," and thus has standing, by alleging that the IML endorsement will effectively ban him from
6  traveling anywhere. *Id.* at 15–16. Dhingra attributes his denial of entry into the Philippines to the
7  "watch list order," which he characterizes as "in fact an actual and real ban on 'meeting with
8  family living abroad,'" and argues that the IML Law in general is not sufficiently narrowly
9  tailored. *Id.* at 8–9. He contends that being denied entry into the Manila and not being able to see
10 his son as a result of the watch list order constitute a "concrete and particularized injury." *Id.*
11 Dhingra argues that the "Department of State's IML endorsement and notification requirements is
12 an alternative to, and a 'permanent form' of Watch List Order, that is designed to deny entry to
13 almost all countries." *Id.* at 10. Dhingra further argues that the United States "do[es] not have a
14 standing to impose the IML Law on plaintiff," because the IML provision is designed to prevent
15 future behavior, which he argues is "speculative, conjectural and hypothetical." *Id.* He contends
16 that the IML Law "probably also violate[s] the eighth amendment civil right of cruel and unusual
17 punishment (considering the 'USA' to be a giant prison because of the travel ban on 'meeting with
18 family living abroad.')." *Id.* He contrasts this with the fact that sex offenders living in the United
19 States may meet with their family and children within the country. *Id.* Dhingra argues that while
20 the IML endorsement has "good intentions," its effect is overly broad and prevents individuals like
21 him from associating with family abroad. *Id.* at 16.

22     Dhingra also argues that because the sex offender registry is public, there was no need to
23 notify foreign authorities either by issuing a watch list order or by mandating an IML-endorsed
24 passport, which he contends "violated [his] civil rights." *Id.* at 20. Dhingra also opposes
25 dismissal under Rule 12(b)(6), arguing that his claims "have facial plausibility" and that the facts
26 pleaded allow the Court to "draw [a] reasonable inference that the defendants are liable for
27 violation of Plaintiff's civil rights." *Id.* at 21. Dhingra asserts that it is not necessary to show that
28 he traveled with an IML passport to establish standing because he experienced, in effect, what the

6

restrictions would be like if he did have the IML endorsement when the passport authorities denied him entry in Manila because of the watch list order. *Id.* at 22.

### D. The United States' Reply Brief

In response, the United States reasserts its arguments under Rules 12(b)(1) and 12(b)(6), and also addresses Dhingra's arguments with respect to his underlying criminal conviction. *See generally* Reply (dkt. 32). First, the United States argues that Dhingra has not "identified any imminent prospect of future injury," because he neither holds a passport with an IML endorsement nor has a "concrete plan to travel internationally." *Id.* at 2. The United States again argues that Dhingra lacks standing to challenge the passport provision of the IML because he "has suffered no 'injury in fact' from it." *Id.* at 3. Further, any injury he can show would not be "traceable" to the United States, because such denial into the country "was or would be 'the result of the independent action of [a] third party not before the court.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The United States asserts that Dhingra himself admitted that "on the one occasion Philippine officials allegedly denied him entry, they did so 'when there was no endorsement' on his passport." *Id.* The United States argues that "it would be inappropriate for the Court to prohibit the United States' transmission of accurate information about Plaintiff's criminal history to parallel foreign authorities given the political branches' considerable discretion over such communication." *Id.* at 4–5.

The United States also reasserts its arguments that Dhingra fails to state a claim regarding either familial association or free exercise of religion. *Id.* at 5, 7. With respect to Dhingra's due process claim, the United States notes that "[s]hortly after the United States filed its motion, Judge Armstrong denied [Dhingra's] petition [for writ of error coram nobis] as 'frivolous.'" *Id.* at 8. Because, according to the United States, Dhingra no longer argues that the "IML's application to him pending his now-denied petition for writ of error coram nobis violates his right to due process," the United States argues that he "concedes that his due process claims fail." *Id.* Rather, the United States contends that Dhingra's "argument depends on the alleged invalidity of Plaintiff's criminal conviction and is barred by *Heck*." *Id.*

The United States concludes that "[w]ith respect to Rule 12(b)(6), leave to amend would

7

be futile because—for the reasons set forth in the United States' motion and again above—Plaintiff cannot state a constitutional claim regarding the IML's passport identifier and notification provisions." *Id.* To the extent that Dhingra suggested a possible Eighth Amendment or *Bivens* claim in his opposition brief, the United States argues that he also cannot succeed with either of these claims. *Id.* at 8–9.

## III. ANALYSIS

### A. The International Megan's Law and *Doe v. Kerry*

Congress passed the IML in 2016 to "protect children and others from sexual abuse and exploitation, including sex trafficking and sex tourism, by providing advance notice of intended travel by registered sex offenders outside the United States to the government of the country of destination." IML, Pub. L. No. 114-119, 130 Stat. 15 (2016) (preamble). The IML established an "Angel Watch Center" within HSI's Child Exploitation Investigations unit. *Doe v. Kerry*, No. 16-cv-0654-PJH, 2016 WL 5339804, at *2 (N.D. Cal. Sept. 23, 2016). "[W]here the Angel Watch Center has identified internationally traveling individuals convicted of sexual offenses against minors and where certain conditions are satisfied, the IML provides that the Center 'may transmit relevant information to the destination country about [the] sex offender.'" *Id.* (quoting IML § 4(e)(3)(A), 34 U.S.C. § 21503(e)(3)(A)) (second alteration in original). The statute further provides that, unless the Angel Watch Center determines that an individual is no longer required to register as a sex offender,

> the Secretary of State shall not issue a passport to a covered sex offender unless the passport contains a unique identifier, and may revoke a passport previously issued without such an identifier of a covered sex offender.

22 U.S.C. § 212b(b)(1). This provision is intended to prevent convicted sex offenders from "'thwarting [IML] notification procedures by country hopping to an alternative destination not previously disclosed.'" *Doe*, 2016 WL 5339804, at *5 (quoting a statement from the Congressional Record) (alteration in original).

Soon after the IML was enacted, a number of plaintiffs challenged the law in *Doe v. Kerry*, arguing, as Dhingra does here, that its passport and notification provisions violated their rights to

8

substantive due process and to associate. *Id.* at \*9. Like Dhingra, those plaintiffs were convicted of sex offenses involving minors, and some of them had family members abroad. *Id.* at \*7–8. Judge Hamilton dismissed the plaintiffs' claims for lack of standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). *Id.* at \*12, \*19, \*22.

At the time of the *Doe* case, the passport identification provisions of the IML had not yet taken effect. *Id.* at \*6. Judge Hamilton therefore dismissed the plaintiffs' claims with respect to those provisions for lack of standing, holding that they could not "show a certainly impending injury." *Id.* at \*11. Judge Hamilton also held that the plaintiffs lacked standing to challenge the notification provisions of the IML, because those provisions did not significantly change existing practices that predated the law, and the plaintiffs' alleged injury was therefore not redressable by the injunction they sought against enforcement of the IML. *Id.* Despite those holdings, Judge Hamilton "also briefly addresse[d] the arguments raised with regard to whether the complaint states a claim." *Id.* at \*16.

With regard to the substantive due process claim, Judge Hamilton held that rational basis review applied, and that the plaintiffs

> alleged no facts sufficient to show a liberty interest in preventing U.S. authorities from transmitting accurate information about individuals' criminal histories to parallel authorities in countries where these individuals plan to travel. Moreover, even assuming such a liberty interest exists, the IML's notification and passport identifier provisions are rationally related to government interests in preventing U.S. persons from committing acts of sexual abuse or exploitation in other countries and in facilitating cooperation with and reciprocal notifications from other countries.

*Id.* at \*22. Judge Hamilton agreed that the right to associate with family—which the plaintiffs raised as a component of a procedural due process claim—is a liberty interest, but held that the plaintiffs failed to state a claim on which relief could be granted because they "alleged no facts showing that the government has deprived them of the interest at issue." *Id.* at \*24. Having noted in the context of standing that IML notification provisions do not "authorize DHS, [the U.S. Marshals Service], or the Department of State to combine the notifications with any attempt to coerce or even persuade foreign authorities to take any particular action, nor even suggest that they do," *id.* at \*11, Judge Hamilton held that the IML authorized only the communication of factual

9

information—the fact of a conviction—and that, based on existing precedent addressing sex offender registries, any resulting stigma stems from the conviction rather than the notification and the plaintiffs were afforded sufficient due process under criminal law to challenge the convictions themselves, *id.* at *25.[4]

### B. Subject Matter Jurisdiction

#### 1. Legal Standard Under Rule 12(b)(1)

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted). A plaintiff's standing under Article III of the United States Constitution is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial challenge to subject matter jurisdiction—as the United States raises here—the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

#### 2. Dhingra Has Standing

The Supreme Court has identified three elements necessary to establish "the irreducible constitutional minimum of standing" under Article III:

> First, the plaintiff must have suffered an "injury in fact"—an invasion

---

[4] The Ninth Circuit did not have an opportunity to consider *Doe v. Kerry*, as the plaintiffs voluntarily dismissed their appeal of Judge Hamilton's order dismissing the case. *See Doe v. Kerry*, No. 16-700, 2017 WL 5514566 (9th Cir. Mar. 30, 2017) (order granting motion for voluntary dismissal).

10

> of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in original; citations and footnote omitted without ellipses).

The United States contends that Dhingra lacks standing because he "has not explained how his familial association depends on international travel or how his free exercise or religion has been burdened." Mot. at 8. Those arguments go more to the merits than to standing, and regardless, Dhingra alleges that he was unable to visit his son who resides in the Philippines and is unable to attend "religious ceremonies" and "religious holidays and functions" with family members abroad. FAC ¶¶ 6, 16, 27. The United States' argument that "it would be inappropriate for the Court to prohibit the inter-governmental transmission of accurate information about [Dhingra's] criminal history," Mot. at 9, is similarly not an issue of standing.

The United States also argues that Dhingra has not alleged concrete plans to travel in the future. *Id.* at 8. Dhingra alleges, however, that he has already been denied entry to the Philippines once as a result of the sort of notification that he challenges in this case, and that his passport has already been revoked. FAC ¶¶ 6–7, 12, 14. Those allegations are sufficient to show actual, particularized injury that has already occurred, and it is reasonable to infer from Dhingra's allegations that, but for the notification, passport revocation, and passport endorsement provisions of the IML, he would attempt to travel again in the future to visit his son and other family members residing abroad.

The United States offers more persuasive arguments that the ultimate and most severe harm that Dhingra alleges—denial of entry to foreign countries—stems from the independent action of third parties (i.e., the immigration authorities of those countries) and is not redressable by an order of this Court. *See* Mot. at 8–9. That is certainly true at least to some extent. Nevertheless, taking as true at this stage of the case Dhingra's allegation that the IML notification and endorsement effectively operates as a complete bar to international travel, the United States'

11

dissemination of information regarding Dhingra's conviction is one factor contributing to those foreign actors' decisions. *See* FAC ¶ 17. Moreover, while there would certainly be differences with respect to the merits, it is not clear how a *standing* analysis would differ if Dhingra alleged that he had not been convicted of a crime and the notification and endorsement were therefore erroneous, or if the information disclosed to foreign governments and allegedly affecting their immigration decisions were truthful but sensitive and not a matter of public record, such as a plaintiff's sexual orientation or religious affiliation—both circumstances where a plaintiff would presumably at least have standing to bring a claim, although this Court does not address the merits of such hypotheticals.

The Court holds Dhingra's complaint sufficient to allege concrete, particularized, actual or imminent injury, fairly traceable to the conduct of the United States and likely redressable at least in part by a favorable decision, and declines to dismiss the case in its entirety for lack of standing. That being said, the harm attributable to the United States and potentially redressable in this case is circumscribed. The decisions of foreign countries to deny Dhingra entry based on that information are "the result of the independent action of some third party not before the court," and outside the scope of this case. *See Lujan*, 504 U.S. at 560–61 (citation, internal quotation marks, and brackets omitted). The Court analyzes Dhingra's claims below based on the more limited harm of dissemination of information.

### 3. *Heck v. Humphrey*

Portions of Dhingra's complaint and much of his opposition brief argue that his criminal conviction was erroneous. *See, e.g.*, FAC ¶ 31; Opp'n at 1–7. However, as Judge Armstrong has ruled in various other civil cases that Dhingra has brought, *Heck v. Humphrey* bars "any claim that necessarily implies the invalidity of a prior criminal conviction . . . unless the conviction has been reversed, expunged, or otherwise declared invalid." *Dhingra v. United States*, No. C 18-06627 SBA, 2019 WL 248907, at *3 (N.D. Cal. Jan. 17, 2019) (citing *Heck*, 512 U.S. 477, 486–87 (1994)). Dhingra had the opportunity to appeal his criminal conviction—he did so, and the Ninth Circuit upheld his conviction in 2004. *See United States v. Dhingra*, 371 F.3d 557 (9th Cir. 2004). Further, on July 1 of this year, Judge Armstrong declared Dhingra's petition for writ of error

coram nobis "frivolous" and denied it. *See United States v. Dhingra*, No. CR 01-40144 SBA, 2019 WL 2744852, at *4 (N.D. Cal. July 1, 2019). This separate civil action is not an appropriate forum for Dhingra to challenge once again his criminal conviction, which has been upheld at every stage where it could properly be considered. Based on *Heck*, the Court disregards Dhingra's argument that his conviction was erroneous.[5]

### C. Failure to State a Claim

#### 1. Legal Standard Under Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim on which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

---

[5] The Ninth Circuit has not addressed whether the limitation of *Heck* is jurisdictional. *See Washington v. L.A. Cty. Sheriff's Dep't*, 833 F.3d 1048, 1058 n.7 (9th Cir. 2016) (declining to reach the issue); *see also Wolinski v. Lewis*, No. 2:17-cv-00583 MCE AC P, 2017 WL 3947787, at *2 (Sept. 8, 2017), *report and recommendation adopted*, 2018 WL 306319 (E.D. Cal. Jan. 5, 2018). Regardless of whether it is a matter of jurisdiction or a non-jurisdictional limitation, however, *Heck* bars Dhingra's claims to the extent that they rest on arguments challenging his conviction.

13

will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even post-*Iqbal*, courts must still liberally construe pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). As the Ninth Circuit explained in *Hebbe*, "while the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342. Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses a complaint under Rule 12(b)(6), it should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). In general, courts "should freely give leave when justice so requires." *Id.* This rule is applied with "extreme liberality," *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003), and nonmoving parties bear the burden of demonstrating why leave to amend should not be granted, *Genentech, Inc. v. Abbot Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

### 2. Dhingra Fails to State a Claim on Which Relief May Be Granted

Dhingra asserts a "fundamental" right to familial association. Opp'n at 3, 5–6. The Ninth Circuit has acknowledged that "[t]he substantive due process right to family integrity or to familial association is well established. A parent has a 'fundamental liberty interest' in companionship

14

with his or her child." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) (citation omitted). However, the Ninth Circuit has also recognized that "[t]he parents' fundamental right to familial association 'is not absolute' and 'must be balanced against the interests of the state.'" *United States v. Wolf Child*, 699 F.3d 1082, 1092 (9th Cir. 2012) (quoting *Kruse v. Hawai'i*, 68 F.3d 331, 336 (9th Cir. 1995)). "Interference with that right [of familial association], however, requires 'a powerful countervailing interest' . . . ." *Id.* (quoting *Lassiter*, 452 U.S. 18, 27 (1981)).

This case does not involve direct interference by the United States with Dhingra's right to familial association. Instead, the decision to prevent Dhingra from entering the Philippines, and thus from visiting his son, was made by the Philippine immigration authority. *See* FAC ¶¶ 6, 10–12. The interest, if any, infringed by the United States is Dhingra's desire not to have his conviction for a sex offense publicized to foreign immigration authorities, or as Judge Hamilton described the claims in *Doe*, "prevent[ing] U.S. authorities from transmitting accurate information about individuals' criminal histories to parallel authorities in countries where these individuals plan to travel." *Doe*, 2016 WL 5339804, at *22.

In the parallel context of challenges to public registries of sex offenders, the Ninth Circuit has held that "'persons who have been convicted of serious sex offenses do not have a fundamental right to be free from . . . registration and notification requirements." *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014) (quoting *Doe v. Tandeske*, 361 F.3d 594, 597 (9th Cir. 2004) (per curiam)); *see also Smith v. Doe*, 538 U.S. 84, 98 (2003) ("[T]he stigma of Alaska's Megan's Law results not from public display for ridicule and shaming but from the dissemination of accurate information about a criminal record, most of which is already public. Our system does not treat dissemination of truthful information in furtherance of a legitimate governmental objective as punishment."). Any indirect effect that such registration has on Dhingra's ability to associate with his family is justified by and "rationally related to government interests in preventing U.S. persons from committing acts of sexual abuse or exploitation in other countries and in facilitating cooperation with and reciprocal notifications from other countries." *Doe*, 2016 WL 5339804, at *22. The same holds true for any incidental effect on Dhingra's ability to practice his religion. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520,

531 (1993) ("[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.").[6]

For the reasons stated in *Doe*—which Dhingra distinguishes only based on its holdings regarding standing and ripeness, without addressing the fact that the decision went on to consider the merits of the plaintiffs' claims—the Court holds that Dhingra has not stated and cannot state a claim that the United States' dissemination of truthful information regarding his criminal conviction, whether through direct notification or endorsement of a passport, violates his rights under the United States Constitution. *See Doe*, 2016 WL 5339804, at *19–25. The Court concludes that leave to amend would be futile and DISMISSES this action with prejudice.

## IV. CONCLUSION

For the reasons stated above, the United States' motion to dismiss is GRANTED, and this action is DISMISSED with prejudice. The Clerk is instructed to enter judgment in favor of the United States.

**IT IS SO ORDERED.**

Dated: August 6, 2019

JOSEPH C. SPERO
Chief Magistrate Judge

---

[6] Neither party has addressed the Religious Freedom Restoration Act, "which prohibits the Federal Government from taking any action that substantially burdens the exercise of religion unless that action constitutes the least restrictive means of serving a compelling government interest." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 690–91 (2014). Having not identified his religion, any particular tenets of that religion, or any reason why international travel is necessary to practice his religion, Dhingra has not stated a claim that the IML "substantially burdens [his] exercise of religion." *See id.* Moreover, given that the United States' conduct under the IML consists solely of disseminating truthful information about Dhingra's criminal conviction, any substantial burden on his religion based on inability to travel would result from the decisions of foreign immigration authorities, not the conduct of the United States.

16